WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorneys for Appellant/Debtor,
Ramin Yeganeh

**FILED**

JUL 1 - 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, <br><br>        Debtor. | ) Case No.  4:08-cv-01816 CW <br> ) Bankruptcy No. 05-30047 TEC <br> ) |
| RAMIN YEGANEH, <br><br>        Appellant. <br> v. <br><br> ANDREA WIRUM, Bankruptcy Trustee <br><br>        Appellee. | ) APPELLANT'S OPENING <br> ) BRIEF ON APPEAL FROM THE <br> ) BANKRUPTCY COURT'S ORDER <br> ) AUTHORIZING COMPROMISE OF <br> ) CLAIM OF ROBERT AND ALYSSA <br> ) SCOTT <br> ) <br> ) <br> ) |

# TABLE OF CONTENTS

TOPIC                                                              PAGE

TABLE OF AUTHORITIES                                               ii

APPELLANT'S OPENING BRIEF ON APPEAL FROM               1
THE BANKRUPTCY COURT'S ORDER AUTHORIZING
COMPROMISE OF CLAIM OF ROBERT AN ALYSSA
SCOTT

BASIS OF APPELLATE JURISDICTION                            1

ISSUES PRESENTED AND STANDARD OF REVIEW                    2

STATEMENT OF THE CASE                                     3

BACKGROUND OF THE SCOTTS' CLAIM                           3

STATEMENT OF FACTS                                        5

I       THE APPLICABLE STANDARDS GOVERNING           10
        THE BANKRUPTCY COURT'S DECISION
        REGARDING ITS "ORDER AUTHORIZING
        COMPROMISE"

   A.   The Probability of Success.                       11

        1.      The Scotts' Bankruptcy Claim is Invalid.  12

        2.      The Scotts' Bankruptcy Claim is Meritless. 12

   B.   Difficulty in Collection.                         15

   C.   Complexity, Expense, and Delay.                   15

   D.   Paramount Interest of Creditors.                  16


CONCLUSION                                               18

# **TABLE OF AUTHORITIES**

| STATUTE | PAGE |
|---|---|
| CC { 1695, et seq. | 4, 12 |
| 11 U.S.C. { 726(a)(2) | 3, 9 |
| 11 U.S.C. { 726(a)(4) | 3, 9 |
| 28 U.S.C. { 158 | 1 |

| CASE | PAGE |
|---|---|
| In re A & C Properties (9th Cir. [Cal.] 1986)<br>784 F.2d 1377 | 10, 15 |
| In re Arnold (6th Cir. 1990)<br>908 F.2d 52 | 2 |
| In re Drehsen (M.D. Fla. 1995)<br>190 B.R. 441 | 2 |
| In re Los Angeles International Airport Hotel Associations<br>(9th Cir. B.A.P. 1996) 196 B.R. 134 | 3, 12, 17-18 |
| Matter of Pizza of Hawaii, Inc. (9th Cir. 1985)<br>761 F.2d 1374 | 2 |
| United States v. Gypsum Co. (1948)<br>333 U.S. 364, 68 S.Ct. 525, 92 L.Ed.2d 746 | 2 |

| OTHER AUTHORITIES | PAGE |
|---|---|
| Rules of Bankruptcy Procedure, Rule 8001 | 1 |

WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorneys for Appellant/Debtor,
Ramin Yeganeh

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, | Case No. 4:08-cv-01816 CW |
| Debtor. | Bankruptcy No. 05-30047 TEC |
| RAMIN YEGANEH, | APPELLANT'S OPENING BRIEF ON APPEAL FROM THE |
| Appellant. | BANKRUPTCY COURT'S ORDER |
| v. | AUTHORIZING COMPROMISE OF CLAIM OF ROBERT AND ALYSSA |
| ANDREA WIRUM, Bankruptcy Trustee | SCOTT |
| Appellee. | |

Appellant Ramin Yeganeh (hereinafter "appellant") respectfully submits this

opening brief on his appeal from the bankruptcy court's "Order Authorizing

Compromise" in this matter.

BASIS OF APPELLATE JURISDICTION

Title 28 of the United States Code section 158 and Rules of Bankruptcy

Procedure, Rule 8001 authorize an appeal from a final order of the bankruptcy court

directly to the United States District Court.

## ISSUES PRESENTED AND STANDARD OF REVIEW

The issues in this appeal are as listed in the appellants "Designation of Record and Issues on Appeal" filed in the bankruptcy court on March 14, 2008.  (See BK Doc. #411[1].)  Of course the salient issue will be whether the bankruptcy court erred in approving as fair and equitable the trustee's "Notice of Compromise" in its March 5, 2008 "Order Authorizing Compromise".

An appellate court may consider any issue presented by the record, even if the issue was not presented to the bankruptcy court.  (Matter of Pizza of Hawaii, Inc. (9th Cir. 1985) 761 F.2d 1374, 1379.)

The standard of review in this appeal is that the appellant must demonstrate that the lower bankruptcy court's findings are clearly erroneous.  The bankruptcy court's conclusions of law are reviewed de novo.  (Matter of Pizza of Hawaii, Inc., supra, at 761 F.2d 1377; In re Drehsen (M.D. Fla. 1995) 190 B.R. 441, 442; Rules of Bankruptcy Procedure, Rule 8013.)  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record, is left with the definite and firm conviction that a mistake has been made.  (United States v. Gypsum Co. (1948) 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746, 766; In re Arnold (6th Cir. 1990) 908 F.2d 52, 55.)

---

[1] This reference to the record refers to Bankruptcy Docket No., which is the record on appeal.  Also refer to the Appellant's Designation of the Record and Issues on Appeal.

## STATEMENT OF THE CASE

This action is an appeal from a final order of the Bankruptcy Court of the Northern District of California, the Honorable Thomas E. Carlson, presiding. This order was that court's "Order Authorizing Compromise" entered on March 5, 2008. (BK Doc# 405.) Pursuant to that order, the bankruptcy trustee is authorized to compromise the bankruptcy claim of Robert and Alyssa Scott as follows: the Scotts would have (a) a general unsecured claim in the amount of $100,000 payable under Title 11 of the United States Code, section 726(a)(2), and (b) a subordinated claim in the amount of $125,000 payable under Title 11 of the United States Code, section 726(a)(4).

Appellant maintains that this compromise is not fair and equitable as required by applicable law.

## BACKGROUND OF THE SCOTTS' CLAIM

The Scotts filed a proof of claim for $500,000 on April 28, 2005. No documentation was attached to the proof of claim form. The stated basis for the Scotts' claim was "fraudulent foreclosure rescue claim". An authentic copy of the proof of claim is at BK Doc. #66. (Also see BK Doc. #388 at Exhibit #1 to debtor's declaration.) If a proof of claim is based on a writing and the writing is not attached, the claim is not entitled to prima facie validity. (In re Los Angeles International Airport Hotel Associates (9th Cir. B.A.P. 1996) 196 B.R. 134, 139.) The Scotts' claim is based on a writing called the "Equity Purchase Agreement", which was not attached. Thus the Scotts' proof of claim does not have prima facie validity.

The Scotts' claim, according to them, relates to the sale of their property located at 1278 79th Avenue, Oakland, California on December 6, 2002. The Scotts were represented by their real estate broker and agent at the time. The Scotts alleged that the sales contract they entered into with the debtor on November 18, 2002 did not comply with the Home Equity Sales Contracts Act ("HESA") contained in Civil Code sections 1695, et seq, and that the debtor violated HESA. The Scotts alleged that the debtor acted as a foreclosure consultant and he intentionally and negligently made factual misrepresentations regarding said sale. The Scotts filed a First-Amended Complaint against the debtor and five other defendants, including their own real estate broker and agents, in the Alameda County Superior Court. The debtor filed a cross-complaint against the Scotts alleging fraud, breach of contract, etc. This matter is still pending before the Alameda County Superior Court. No trial has been scheduled and no judgment has been rendered against the debtor or the Scotts.

The debtor filed for a Chapter 13 Bankruptcy in pro per on January 7, 2005 for unrelated reasons. At the request of the claimants, including the Scotts, who filed a Joinder, the debtor's bankruptcy case was converted to a Chapter 7 on January 21, 2005. Thus the debtor cannot voluntarily dismiss his bankruptcy. The state court action has been stayed ever since.

The Scotts never applied for relief from the bankruptcy stay to proceed to trial in their state court action against the debtor. On January 2, 2007, the bankruptcy trustee filed an "Objection to Claim" on Scotts' claim. (See BK Doc. #331.) On September 10, 2007, the bankruptcy trustee filed a detailed "Trustee's Response to Claimant's Reply to Objection to Claim" on Scotts' claim. (See BK Doc. #388, Exhibit #3.) Four months

later on January 15, 2008, the trustee filed "Notice of Compromise of Claim" on Scotts'

claim. (See BK Doc. #383.) The debtor has also filed his own Objection to the Scotts'

claim. (See BK Doc. #384.)

## STATEMENT OF FACTS

In October of 2000, the Scotts obtained a mortgage on the property. Ten months

later in August of 2001, the mortgage company recorded a Notice of Default against the

Scotts for their non-payment of their mortgage. On November 14, 2001, a Notice of

Trustee's Sale (a foreclosure notice) was recorded against the Scotts and their property.

On November 19, 2001, the Scotts filed a Chapter 13 Bankruptcy Petition in the Oakland

Division, Case No. 01-46162, to delay the foreclosure. On January 10, 2002, the Scotts

filed their "First-Amended Chapter 13 Plan" in their bankruptcy, in which they declared

the value of their property to be $180,000. (See BK Doc. #388, Exhibit #5, p. 2.) Under

the terms of the First-Amended Chapter 13 Plan, the Scotts were required to keep current

their mortgage payments of $1,091.00 per month to their mortgage company. This they

failed to do. The Scotts went into default under their Chapter 13 Plan. The Bankruptcy

Court required the Scotts to resume and keep current their monthly mortgage payments as

adequate protection against the trustee's sale (foreclosure sale) of their property or else

the trustee's sale would proceed. The Scotts were unable or unwilling to do so. On

October 17, 2002, the Scotts' creditors filed a "Notice of Motion for Relief from Stay" in

which they stated that good cause exists for relief from stay because there was no equity

in the subject property for the benefit of the debtors and there was no adequate protection

for the creditors. (See BK Doc. #388, Exhibit #6, p. 2.) On November 14, 2002, they

filed a "Debtor's Request for Voluntary Dismissal of Case", thus voluntarily dismissing their bankruptcy.  (See BK Doc. #388, Exhibit #7.)

Throughout October and November of 2002, the Scotts were actively planning to sell their property.  In November of 2002 the Scotts met the debtor for the first time, who was referred to them by their real estate broker, RP Real Estate.  The Scotts' property was in a major state of disrepair and they were selling same in an "as is" condition.  The Scotts' property needed extensive roof repair.  The windows throughout the house were broken and needed to be replaced.  The carpet was flea infested and torn, and needed to be replaced.  The bathroom and the kitchen were in a desperate need for repairs and remodeling.  The back of the garage, which was converted into a room, was torn down and needed to be repaired.

On November 18, 2002, the Scotts entered into a purchase agreement with the debtor for the sale of their property.  (See BK Doc. #388, Exhibit #8.)  Said purchase agreement was a standard "Equity Purchase Agreement" on an approved real estate form, which fully complied with the requirements of Civil Code section 1695, et seq. (HESA), and it included a Notice of Right of Cancellation as required by law for properties which had foreclosure proceedings pending against them.  The terms and conditions of the sale and purchase price are clearly spelled out in said purchase agreement as is customary.

On November 26, 2002, the five-day Right of Cancellation expired.  The Scotts did not cancel or rescind within that period of time.

On December 6, 2002, the Scotts made an appointment to appear, and they appeared in the offices of RP Real Estate, their real estate broker, a co-defendant in the state suit, and in the presence of Co-Defendant Nicole Wilkins and Co-Defendant Brian

McKinzie of RP Real Estate, who represented the Scotts as real estate agents in this transaction. In the presence of the debtor and the above-referenced co-defendants and a notary public, the Scotts executed a grant deed by which they sold the property to the debtor. (See BK Doc. #388, Exhibit #9.) Said grant deed was later recorded in the Alameda County Recorder's Office, thus the debtor became the new owner of the property.

On the same date, December 6, 2002, pursuant to the Scotts' instructions, the debtor gave a $9,000.00 cashier's check to Brian McKenzie of RP Real Estate, the Scotts real estate agent and broker for his commission. (See BK Doc. #388, Exhibit #10.) Also pursuant to the Scotts' instructions, the debtor gave a $3,300.00 cashier's check payable to Ellie Sekona, the Scotts' new landlord where the Scotts had moved (see BK Doc. #388, Exhibit #11), and the next day the debtor received a receipt signed by Mr. Scott (see BK Doc. #388, Exhibit #12), showing that the balance owed the Scotts was $0.00. The debtor also paid $1,617.00 to Alameda County for the Scotts' transfer taxes. (See BK Doc. #388, Exhibit #13.) The debtor also paid off Mr. Scotts' Child Support Lien for $19,607.33 in favor of Alameda County Child Support Services, which was recorded against the property. (See BK Doc. #388, Exhibit #14.) The debtor also reinstated and paid off the Scotts' mortgage against the property, totaling $127,584.93, which is the sum of $16,904.83 to reinstate the Scotts' mortgage, plus $110,680.10 for the payoff of the Scotts' mortgage. (See BK Doc. #388, Exhibit #15.) The debtor also paid off the Scotts' delinquent property taxes in the amount of $1,761.25, (see BK Doc. #388, Exhibit #16), and the Scotts' unpaid 2002 property taxes in the amount of $968.43. (See BK Doc.

#388, Exhibit #17.)  Thus the total consideration paid by the debtor was $163,838.94 for this property.

It is obvious that the Scotts did not exercise their right to cancel the Equity Purchase Contract within the five-day cancellation period.  They voluntarily appeared at the offices of their agents and broker.  They accepted the consideration from the debtor on or about December 6, 2002, well after the expiration of the cancellation period, and they voluntarily executed the grant deed in the presence of a notary after the expiration of the cancellation period.  They even provided a signed receipt stating that they were paid in full, and the balance owing from debtor was zero.

Everything was fine until August 19, 2003, after the Scotts were apparently contacted by counsel familiar with the debtor's litigation in San Mateo County in an unrelated case.  Counsel for the Scotts then sent RP Real Estate, LBH Realty, Nicole Wilkins, Brian McKenzie, and the debtor a Notice of Cancellation.  (See BK Doc. #388, Exhibit #18.)  Incredibly in said cancellation notice the Scotts demanded the return of the property they had sold the previous year now free and clear of all liens, mortgages, and encumbrances, without agreeing to reimburse the debtor for the monies he had spent and the total consideration which he had paid for the property.  This Notice of Cancellation was obviously defective under HESA.

In December of 2003 the Scotts filed a complaint by which they sought rescission and cancellation of the Equity Purchase Agreement.  On February 18, 2004, the Scotts filed their First-Amended Complaint against the debtor and five co-defendants in Alameda County Superior Court.  No trial has been held and no judgment has been entered against the debtor.

On January 15, 2008, the trustee in this matter, through her attorneys, filed in the bankruptcy court and served upon appellant his "Notice of Compromise on the Scotts' Claim". (See BK Doc. #383.) In this "Notice" the trustee proposed as a compromise to the Scotts' claim that the Scotts would have (a) a general unsecured claim in the amount of $100,000 payable under Title 11 of the United States Code, section 726(a)(2), and (b) a subordinated claim in the amount of $125,000 payable under Title 11 of the United States Code, section 726(a)(4). Thus the Scotts would receive a total of $225,000 for their claim. This compromise is not a compromise at all. It is certainly not "fair and equitable". It is a scam which further deprives the appellant of his real properties in order to enrich the attorneys involved.

Appellant strenuously opposed the trustee's proposed compromise and filed his objection to said compromise. (See BK Doc. #387-388.) Appellant also formally objected to the validity of the Scotts' claim. (See BK Doc. #384.) All of these matters were scheduled to be heard by the bankruptcy court the same day, February 29, 2008.

On that date a hearing was held on the trustee's proposed compromise and on appellant's objections to the Scotts' claim. (See BK Doc. #415 for a transcript of the February 29, 2008 hearing.) The bankruptcy court took these matters under submission. On March 5, 2008, that court entered its "Order Authorizing Compromise" approving the trustee's proposed compromise and overruled appellant's objection to the Scott's claim. (See BK Doc. #405.)

On March 14, 2008, appellant filed a Notice of Appeal from the bankruptcy court's March 5, 2008 order along with an Election to proceed to the District Court with

his appeal. (See BK Doc. #409 & #410.) Also on March 14, 2008, appellant filed his Designation of the Record and Issues on Appeal in this matter. (See BK Doc. #411.)

I

THE APPLICABLE STANDARDS GOVERNING
THE BANKRUPTCY COURT'S DECISION REGARDING ITS
"ORDER AUTHORIZING COMPROMISE"

The bankruptcy court can approve or reject a proposed compromise regarding any controversy arising in the administration of the estate upon such terms as that court may deem for the best interest of the estate. (In re A & C Properties (9th Cir. [Cal] 1986) 784 F.2d 1377, 1380.) The bankruptcy court had to "find that the compromise is fair and equitable." (emphasis added) (Id. at 784 F.2d 1381.) In determining the fairness, reasonableness, and adequacy of a proposed compromise agreement, this bankruptcy court was required to consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

(Ibid.) The Trustee, as the party proposing the compromise agreement, had the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. (Ibid.) Additionally, while the creditors' interests must be afforded due deference, such interests or objections are not controlling. (Id. at 784 F.2d 1382.) The main focus in approving or rejecting a proposed compromise is that it be "fair and equitable". (Id. at 784 F.2d 1384.)

The debtor now addresses each of the above four determinative factors.

A.  The Probability of Success.

The trustee believes that the probability of success is uncertain.  This position is totally contradictory to the trustee's original stance that the Scotts' claim was frivolous and at the very best, grossly overstated.  (See BK Doc. #388, Exhibits #2 and #3.)  The trustee has 'flip-flopped' from her position of just a few months ago that:

> The Scotts have not provided any persuasive evidence that the value of the property exceeded the $163,000 consideration given by the Debtor in December of 2002 or that the Scotts would have been able to retain the Property by avoiding foreclosure. The value of the property in December 2002 is the crucial fact for determining whether the Scotts suffered economic harm in 2002.  If they did not suffer economic harm, their claim should be disallowed.  As explained below, the Scotts had only a few days to negotiate and close a sale to another buyer.

> The Trustee contends that the value of the Property at the time of the sale was not significantly more than the consideration the Debtor gave; hence, if the Scotts can demonstrate that they could have averted a foreclosure, the Scotts suffered damage in an amount that is far less than they claim.  At $500,000, their claim is grossly overstated.  The Scotts' claim should be disallowed in its entirety or substantially reduced.

(See BK Doc. #388, Exhibit #3, p.1(21)—p. 2(5).)

> A question that cuts across all of the Scotts' liability theories is whether the Scotts suffered damage from their contract with the Debtor and, if so, how much.  The Trustee will demonstrate at trial that at the time the grant deed conveying the Property was signed and recorded, a foreclosure was imminent and inevitable, and the Debtor paid fair market value or close to it at the time.  If the Trustee succeeds in making this showing, the Scotts' claim will be disallowed or drastically reduced.

(See BK Doc. #388, Exhibit #3, p. 2(17-22).)

The debtor agrees with the trustee's original position. Also, the trustee admitted that if the debtor had not entered into a contract to purchase the Scotts' property, the Scotts would have lost their property in foreclosure and would have received nothing. The debtor is certain that the Scotts have no probability of success on their claim for the following reasons.

1. The Scotts' Bankruptcy Claim Is Invalid.

As stated above the Scotts' claim, which was filed on April 28, 2005 in this Bankruptcy Court for $500,000, is based on a writing called the Equity Purchase Agreement. The Scotts' proof of claim does not have prima facie validity because no documentation is attached as required under applicable bankruptcy law. (In re Los Angeles International Airport Hotel Associates (9th Cir. B.A.P. 1996) 196 B.R. 134, 139.) Also, no documentation was attached to the Scotts' claim to justify any claim on their behalf, let alone a $500,000 claim.

2. The Scotts' Bankruptcy Claim Is Meritless.

Assuming the Scotts' claim has prima facie validity, which it does not as stated above, it is based on the Equity Purchase Agreement which is the sole agreement between the debtor and the Scotts regarding the sale of the property.

The Scotts allege that the debtor violated the Home Equity Sales Act (HESA) by not providing a sales contract which complied with the requirements of HESA and that the debtor violated HESA. (See CC {{ 1695, et seq.) The Equity Purchase Agreement executed by the Scotts and the debtor on November 18, 2002 fully complied with HESA

and clearly spelled out the terms and conditions of the sale. The Scotts allege that they were not given a right of cancellation, and that they were not aware of the sales price or the amount of consideration. These allegations are all contradictory to the evidence provided and the Scotts' own statements and actions. The debtor took certain steps and the Scotts also took certain steps to consummate their transaction on December 6, 2002, based on the November 18, 2002 purchase agreement.

The Scotts also allege that at the time of transfer the property had substantial value in excess of the consideration given by the debtor and that the sale of the property caused the Scotts great economic loss. This allegation by the Scotts is contradictory to their previous allegations that they were not aware of the amount of consideration or the sales price given for their property. This allegation is contradictory to the fact that the Scotts were already in foreclosure before they even met the debtor. This allegation is contradictory to the Scotts' bankruptcy filings. If the debtor did not purchase the Scotts' property, they certainly would have lost it in foreclosure for the total mortgage amount of $127,584.93. Additionally, the Scotts cannot prove that they have suffered great economic loss as a result of the sale of the property to the debtor. They have provided absolutely no evidence in the state court nor in the bankruptcy court which proves that they are entitled to $500,000 or any amount close to that. Instead, the documentary evidence is wholly contradictory to the Scotts' allegations. If indeed the property had substantial value in excess of what the debtor paid to the Scotts, why didn't they just refinance their property before, during, or after their bankruptcy? Why didn't they sell their property at a substantially higher price? Why didn't they provide the state court or the bankruptcy court with a competent appraisal of their property from November or

December of 2002, showing a value substantially higher than the $163,838.94

consideration paid by the debtor?

To prove their claim in the bankruptcy court or in the state court, the Scotts must first demonstrate that the debtor violated HESA, and secondly they must demonstrate that they lost substantial equity in the property as a direct result of the sale to the debtor in violation of HESA. Neither of these they can do. The debtor paid approximately $164,000 in consideration for the property, which was slightly more than the $160,000 agreed purchase price. This was the fair market value at the time for the property. The fair market value is defined as what a willing buyer is willing to pay for the property at a specific time.

The Scotts also allege that the debtor violated the Foreclosure Consultants Act by acting as a foreclosure consultant by engaging in a fraudulent foreclosure rescue operation. The Scotts have provided no documentation in the state court nor in the bankruptcy court to support this allegation. It is obvious that the debtor was purchasing this property, thus acting as a buyer of the property. He was not there to rescue the Scotts from foreclosure. He was not there to consult the Scotts on their foreclosure. The Scotts were already represented by a bankruptcy attorney who filed a bankruptcy petition on their behalf regarding their foreclosure. Thus the debtor was not acting as a foreclosure consultant. The debtor was simply acting as a purchaser and he took the necessary steps to consummate the purchase transaction. The debtor simply paid his consideration and he purchased the property. There is nothing illegal, fraudulent, or unconscionable about that. The Scotts have provided no documentation to suggest otherwise in this matter.

B.  Difficulty in Collection.

This element of the A&C Properties test is not a factor in consideration of this compromise.

C.  Complexity, Expense, and Delay.

If this Compromise were not approved, the debtor at his own expense would be willing to go to an evidentiary trial in the bankruptcy court, or in the alternative, seek a relief from the bankruptcy stay to pursue an evidentiary trial in state court. The debtor should be entitled to an evidentiary trial to determine the validity and the true amount of the Scotts' claim before their claim is allowed. The trustee cannot act as a judge and jury and deprive the debtor of his right to an evidentiary trial in this matter. The debtor would be willing to pursue an evidentiary trial at his own expense at no costs whatsoever to the bankruptcy estate.

Regardless of the situation, the debtor strongly believes that if an evidentiary trial is held, either in the bankruptcy court or in the state court, the trier of fact will determine that the Scotts' claim would amount to zero. If not zero, then substantially less than the trustee's Compromise. Moreover, the debtor has a cross-complaint against the Scotts for fraud, breach of contract, failure to disclose in regards to California's mandatory Real Estate Transfer Disclosure Statement, etc. Hence the Compromise is not only cheating the debtor out of his right to an evidentiary trial whereby competent evidence would be produced to determine the validity and true value of the Scott's claim, but also the Compromise would cheat the debtor out of his due process rights regarding his causes of action against the Scotts in his cross-complaint.

In this Compromise the trustee wants to give a total of $225,000 for the Scotts' claim from the debtor's estate. However the debtor is only one of five defendants in the Scotts' lawsuit. What about the other defendants? A few months earlier the trustee stated that Scotts' claim should be disallowed because said claim was frivolous and grossly overstated. The trustee now wants to send $225,000 for the Scotts' unproven claim after knowing that the debtor had already paid nearly $164,000 to purchase the Scotts' property. This is bizarre.

As for the complexity of the underlying Scott litigation, the debtor agrees with the trustee that the issues are not particularly complex. The issue is whether or not the Scotts' claim is allowed under applicable law, if so, did the debtor violate HESA, and if so, what are the damages that the Scotts can prove?

As for the expense, the debtor would be willing to prosecute this litigation via an evidentiary trial either in the bankruptcy court or in state court, at his own expense, at no cost whatsoever to the bankruptcy estate. This is certainly cheaper than having the debtor's estate pay $225,000 for the compromise of the Scotts' claims.

As for the delay element, the debtor has already filed his objection to the Scotts' claim. The bankruptcy court or the state court could also set a trial schedule within a short period of time. Hence the delay element is not an issue. There would be more delay if this Compromise is approved because the debtor will appeal that ruling.

D.  Paramount Interest of Creditors.

The Scotts have submitted a frivolous claim in this bankruptcy proceeding. The Scotts' claim has no prima facie validity and should be disallowed under applicable law.

(See In re Los Angeles International Airport Hotel Associates (9th. Cir. B.A.P. 1996) 196 B.R. 134, 139.) The Scotts' claim for $500,000 has no basis in fact or in law. The Scotts have no judgments against the debtor. There are five other co-defendants involved in the Scott litigation. The Scotts were willing to take $30,000 to settle their claim with one of the co-defendants, Nicole Wilkins, the Scotts' real estate agent, who obviously had more exposure to liability. The Scotts have not pursued their claim in the state court action against any of the other co-defendants, by either trying to settle with same or by taking them to trial. In the three years since the Scotts filed their claim, they have not obtained a relief from the bankruptcy stay to pursue the trial of their claim in the state court.

Simply put, the Scotts should be required to prove their allegations against the debtor by competent evidence to a trier of fact, whether it is in the bankruptcy court or in the state court, to obtain a judgment against the debtor before they can become a valid creditor.

As for Nicole Wilkins, the Scotts' agent, who also submitted a claim in this bankruptcy proceeding for indemnity and her attorney's fees, she should also be required to prove her claim through competent evidence to a trier of fact, whether it is in the bankruptcy court or in the state court, and obtain a judgment against the debtor before she can become a valid creditor.

As for Phyllis Shoop, the other individual represented by the same attorneys as the Scotts, who also submitted a claim against the debtor in this bankruptcy proceeding, she also should be required to prove her claim through competent evidence presented to a trier of fact, whether in the bankruptcy court or in the state court, and obtain a judgment against the debtor before she can become a valid creditor.

1    The claims of the Scotts, Wilkins, and Shoop, must be allowed under applicable

2 law in this bankruptcy proceeding before they can even be considered creditors. In her

3
objections to the claims of the Scotts, Wilkins, and Shoop, the trustee stated said claims

4
5 must be disallowed under applicable law based on In re Los Angeles International

6 Airport Hotel Associates (9th. Cir. B.A.P. 1996) 196 B.R. 134, 139.) (See Exhibit #3, p.

7 1.)

8    Hence this interest of creditors element is inapplicable here. The above claimants

9
10 should not be considered valid creditors yet. They must prove their claims first to a trier

11 of fact.

12

13                                CONCLUSION

14    Consequently, this Compromise should be rejected in its entirety. The Scotts'

15
16 claim should be disallowed because it is invalid under applicable law. Moreover, said

17 claim has no probability of success. If it had, the Scotts' attorneys would have long ago

18 pursued an evidentiary trial in this Bankruptcy Court or would have asked for relief of

19 stay to pursue an evidentiary trial in the state court. The trustee and her attorneys admit

20
21 that the probability of success of the Scotts' claim is uncertain. The bottom line is that

22 this compromise is not fair and not equitable to the debtor nor his estate. It conveys no

23 benefit whatsoever to the bankruptcy estate. This Compromise guarantees $225,000 in

24 total payment for the Scotts' claim which the trustee admitted, just a few months ago, had

25 no probability of success.

26
27    This Court should have no problem in allowing an evidentiary trial to be held to

28 determine the true validity and/or the true value of the Scotts' claim. The Scotts should

1  be required to prove their claim before a trier of fact before getting paid a dime for their

2  claim.

June 30, 2008                    Respectfully Submitted,

                                 /S/ WILLIAM E. GILG
                                 WILLIAM E. GILG,
                                 Attorney for Debtor/Appellant

<u>PROOF OF SERVICE</u>

I, the undersigned, state that I am a citizen of the United States and employed in the City of San Mateo, that I am over the age of 18 and not a party to the within cause; that my business address is 305 San Bruno Avenue West, San Bruno, California; and that on the date set out below I deposited a true copy of the attached documents, listed below, on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

[ ]  Fax via ( )

[]  Personal Service

--by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Bruno, California;

Documents Served: <u>APPELLANTS' OPENING BRIEF ON APPEAL FROM THE BANKRUPTCY COURT'S ORDER AUTHORIZING COMPROMISE OF CLAIM OF ROBERT AND ALYSSA SCOTT</u>

Party Served:  CHARLES P. MAHER, ESQ.
Hamilton & Scripps, LLP
Rincon Center II, 121 Spear Luce, Forward, St., Suite 200
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Bruno, California on June 30, 2008.

/S/ WILLIAM E. GILG
WILLIAM E. GILG