1  WILLIAM E. GILG
   Attorney at Law, #151991
2  305 San Bruno Avenue West
   San Bruno, CA 94066
3  (650) 871-8647
   (650) 873-3168 (fax)
4
   Attorney for Appellant/Debtor,
5  Ramin Yeganeh

6

7

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11 In re RAMIN YEGANEH,            )  Case No.  4:08-cv-01816 CW
                                   )  Bankruptcy No. 05-30047 TEC
12 _____Debtor._____ )
13 RAMIN YEGANEH,                  )  APPELLANT'S REPLY
                                   )  BRIEF ON APPEAL FROM THE
14           Appellant.            )  BANKRUPTCY COURT'S ORDER
                                   )  AUTHORIZING COMPROMISE OF
15 v.                              )  CLAIM OF ROBERT AND ALYSSA
                                   )  SCOTT
16 ANDREA WIRUM, Bankruptcy Trustee )
                                   )
17 _____Appellee._____ )

18

19

20

21

22

23

24

25

26

27

28

Appellant/Debtor's Reply Brief on Appeal          -1-

# TABLE OF CONTENTS

TOPIC                                                          PAGE

TABLE OF AUTHORITIES                                             ii

APPELLANT'S REPLY BRIEF ON APPEAL FROM                           1
THE BANKRUPTCY COURT'S ORDER AUTHORIZING
COMPROMISE OF CLAIM OF ROBERT AN ALYSSA
SCOTT

ISSUES PRESENTED AND STANDARD OF REVIEW                         1

STATEMENT OF THE CASE                                           2

BACKGROUND OF THE SCOTTS' CLAIM                                 3

STATEMENT OF FACTS                                              4

I        THE APPLICABLE STANDARDS GOVERNING                     9
         THE BANKRUPTCY COURT'S DECISION
         REGARDING ITS "ORDER AUTHORIZING
         COMPROMISE"

    A.    The Probability of Success.                          10

    B.    Difficulty in Collection.                            11

    C.    Complexity, Expense, and Delay.                      11

    D.    Paramount Interest of Creditors.                     13

CONCLUSION                                                     15

# TABLE OF AUTHORITIES

| STATUTE | PAGE |
|---|---|
| CC { 1695.1(b) | 5, 8 |
| 11 U.S.C. { 726(a)(2) | 2 |
| 11 U.S.C. { 726(a)(4) | 3 |
| 28 U.S.C. { 158 | |

| CASE | PAGE |
|---|---|
| In re A & C Properties (9th Cir. [Cal.] 1986) 784 F.2d 1377 | 9 |
| In re Arnold (6th Cir. 1990) 908 F.2d 52 | 2 |
| In re Drehsen (M.D. Fla. 1995) 190 B.R. 441 | 2 |
| In re Los Angeles International Airport Hotel Associations (9th Cir. B.A.P. 1996) 196 B.R. 134 | 3, 10, 13 |
| Matter of Pizza of Hawaii, Inc. (9th Cir. 1985) 761 F.2d 1374 | 2 |
| United States v. Gypsum Co. (1948) 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed.2d 746 | 2 |

WILLIAM E. GILG
Attorney at Law, #151991
305 San Bruno Avenue West
San Bruno, CA 94066
(650) 871-8647
(650) 873-3168 (fax)

Attorney for Appellant/Debtor,
Ramin Yeganeh

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, | ) Case No.  4:08-cv-01816 CW |
| | ) Bankruptcy No. 05-30047 TEC |
| Debtor. | ) |
| RAMIN YEGANEH, | ) APPELLANT'S REPLY |
| | ) BRIEF ON APPEAL FROM THE |
| Appellant. | ) BANKRUPTCY COURT'S ORDER |
| v. | ) AUTHORIZING COMPROMISE OF |
| | ) CLAIM OF ROBERT AND ALYSSA |
| ANDREA WIRUM, Bankruptcy Trustee | ) SCOTT |
| | ) |
| Appellee. | ) |

Appellant Ramin Yeganeh (hereinafter "appellant") respectfully submits this

reply brief on his appeal from the bankruptcy court's "Order Authorizing Compromise"

in this matter.


ISSUES PRESENTED AND STANDARD OF REVIEW

The issues in this appeal are as listed in the appellants "Designation of Record and

Issues on Appeal" filed in the bankruptcy court on March 14, 2008. (See BK Doc.

Appellant/Debtor's Reply Brief on Appeal                -1-

#411[1].)  Of course the salient issue will be whether the bankruptcy court erred in

approving as fair and equitable the trustee's "Notice of Compromise" in its March 5,

2008 "Order Authorizing Compromise".

      The standard of review in this appeal is that the appellant must demonstrate that

the lower bankruptcy court's findings are clearly erroneous.  The bankruptcy court's

conclusions of law are reviewed de novo.  (Matter of Pizza of Hawaii, Inc., supra, at 761

F.2d 1377; In re Drehsen (M.D. Fla. 1995) 190 B.R. 441, 442; Rules of Bankruptcy

Procedure, Rule 8013.)  A finding is clearly erroneous when, although there is evidence

to support it, the reviewing court on the entire record, is left with the definite and firm

conviction that a mistake has been made.  (United States v. Gypsum Co. (1948) 333 U.S.

364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746, 766; In re Arnold (6th Cir. 1990) 908 F.2d

52, 55.)

## STATEMENT OF THE CASE

      This action is an appeal from a final order of the Bankruptcy Court of the

Northern District of California, the Honorable Thomas E. Carlson, presiding.  This order

was that court's "Order Authorizing Compromise" entered on March 5, 2008.  (BK Doc#

405.)  Pursuant to that order, the bankruptcy trustee is authorized to compromise the

bankruptcy claim of Robert and Alyssa Scott as follows:  the Scotts would have: (a) a

general unsecured claim in the amount of $100,000 payable under Title 11 of the United

States Code, section 726(a)(2); and (b) a subordinated claim in the amount of $125,000

---

[1] This reference to the record refers to the Bankruptcy Docket No., which is the record on appeal.  Also
refer to the Appellant's Designation of the Record and Issues on Appeal.

payable under Title 11 of the United States Code, section 726(a)(4). The appellee/trustee is then authorized to liquidate the appellant's assets to pay this $225,000 claim.

Appellant filed and served his opening brief on June 30, 2008. The appellee/trustee filed her brief on July 18, 2008. Appellant now submits this reply brief and maintains that this compromise is not fair and equitable as required by applicable law.

## BACKGROUND OF THE SCOTTS' CLAIM

The Scotts filed a proof of claim for $500,000 on April 28, 2005. No documentation was attached to the proof of claim form. No judgment was ever entered in the Scotts' favor. The stated alleged basis for the Scotts' claim was "fraudulent foreclosure rescue claim". An authentic copy of the proof of claim is at BK Doc. #66. (Also see BK Doc. #388 at Exhibit #1 to debtor's declaration.) If a proof of claim is based on a writing and the writing is not attached, the claim is not entitled to prima facie validity. (In re Los Angeles International Airport Hotel Associates (9th Cir. B.A.P. 1996) 196 B.R. 134, 139.) As stated by the Scotts, the Scotts' claim is based on a writing called the "Equity Purchase Agreement", which was not attached. The claims submission deadline was July 18, 2005. Thus the Scotts' proof of claim does not have prima facie validity.

Appellant refers the Court to his opening brief for a further description of the chronology of the events surrounding the Scotts' claim.

## STATEMENT OF FACTS

Appellant refers the Court to his opening brief for a complete and detailed description of the Statement of Facts surrounding this matter. Appellant will briefly recite the relevant facts in reply to the appellee's recitation of same.

On January 10, 2002, when the Scotts were facing foreclosure, they filed their "First-Amended Chapter 13 Plan" in their bankruptcy, in which they declared the value of their property, 1278 79th Avenue, Oakland, California ("subject property"), to be $180,000 as collateral for their mortgage. (See BK Doc. #388, Exhibit #5, p. 2; also see appellee's excerpts of record, pp. ER-042 – ER-043.) Even though this was an exaggeration at the time, the bankruptcy court went along with it until an appraisal was done by the Scott's bankruptcy trustee and the Scott's creditors. Therefore the appellee's contention that the subject property was worth in the low $200,000's is false. According to the Scott's the value of the subject property as stated in their Chapter 13 bankruptcy plan and signed by them under penalty of perjury, as of the year 2002, was $180,000. (See appellee's excerpts of record, p. ER-042.) Later that year the creditors determined the value of the subject property to be approximately $160,000, which meant that the Scotts had no equity in said property. On October 17, 2002, the Scotts' creditors filed a Notice of Motion for Relief from Stay in which after appraising the subject property they sought the following:

> The Motion will be made on the grounds that there is cause for relief from stay, including (1) lack of adequate protection; (2) no equity in the subject property for the benefit of the Debtor and the property is not necessary for an effective reorganization; and (3) Debtor's failure to make the required Trust Deed payments.

(Appellee's excerpts of record, pp. ER-045 – ER-046.) The Scotts' bankruptcy court agreed that the Scotts had no equity in said property. The Scotts were forced to dismiss their Chapter 13 bankruptcy (see appellee's excerpts of record, p. ER-048) because the creditors' motion for relief from stay was granted.

The appellee tries to create much uncertainty about the value of the Scotts' property prior to the sale. There is no uncertainty here. The Scotts' had no equity in their property before they sold it to the appellant in 2002. The bankruptcy court had already determined back in 2002 that the Scotts had no equity in their property, that their property value was equal to the total amount of their debts. The appellee's own excerpts of record prove that. If the Scotts had no equity in their property, they cannot prove damages when they sold their property to the appellant to satisfy their debts in 2002.

Also back in 2002 the Scotts were represented by a bankruptcy attorney and hence were advised to sell their property before losing it in foreclosure. The Home Equity Sales Act ("HESA") only applies if the homeowner resides in the property and has equity in same. (See CC } 1695.1(b).) Obviously the Scotts' bankruptcy court had determined back in 2002 that they had no equity in the property.

Neither the appellant's trustee, here the appellee, nor the Scotts ever produced any appraisal, in the bankruptcy court or in the state court, showing that the property was worth $190,000 or $200,000 or any higher figure. Neither the appellee nor the Scotts ever produced any documentation showing that they had any equity in the subject property before the Scotts sold their property to the appellant to satisfy their debts.

All documentary evidence, including all receipts, as well as appellee's own excerpts of record, pages ER-050 through ER-073, prove that the appellant entered into a

purchase agreement on November 18, 2002 with the Scotts to purchase the subject property for $160,000 and ended up paying $163,838.94 (including closing costs). Once that was paid in full on December 6, 2002, a grant deed was recorded conveying the property to the appellant who was the purchaser at closing. Also, the Scotts signed a receipt at the offices of their real estate broker in front of their real estate agent stating that they were paid in full and the balance owed was $0.00. (See appellee's excerpts of record at p. ER-059.) The appellant has provided all receipts including copies of the cashier's check, copies of the receipts, and the Scotts' bankruptcy court records going back to 2002, all of which prove that the Scotts were paid in full. The appellee and the Scotts have not produced a single document to the contrary. Therefore the Scotts cannot prove damages.

Not only did the Scott's bankruptcy court records prove that the Scotts had no equity in the property when they were facing foreclosure, the appellant's records also prove that they were paid in full for said property. Therefore the Scotts can never prove that the appellant violated HESA because they had no equity in the property and they cannot prove damages either. If the Scotts could prove damages and had a viable case, they would have done what any other creditor would have done, that is, to ask for a relief from stay in the appellant's bankruptcy to go to trial in the state court. The Scotts never brought such a motion. Instead they are now trying to get $225,000 from the appellant's estate for a claim which they have not proven. This is a scam, pure and simple.

The appellee in his brief repeatedly attempts to demonize the appellant. First without any justification and proof she mentions that the appellant will not make a credible witness. Then the appellee argues that the appellant used a false name when

purchasing the Scotts' property, "R. Rad". This is not true. The appellant is a naturalized United States citizen. (See appellant's record on appeal, Exhibit #27 [which is a letter dated January 22, 1988 from the United States District Court certifying the appellant's naturalized name of "Ramin Rad"].) Hence the name "R. Rad" is not a false name and does not violate HESA. It is the appellee who has a credibility issue here.

The appellee in her brief comes up with another excuse, specifically an allegation which the appellee and the Scotts have floated around to show that the appellant somehow violated HESA. This false allegation is that the November 18, 2002 purchase agreement where the Scotts contracted to sell their property to the appellant was actually signed on the day of the closing on December 6, 2002, and back dated to November 18, 2002 to avoid the five-day right of recission. This allegation is false. First of all, the November 18, 2002 Equity Purchase Agreement is a standard purchase agreement where a residence is in foreclosure, and this agreement at the bottom of page two clearly provides a Notice of Right of Cancellation for five days after said agreement is executed. The Scotts received a copy of this agreement on November 18, 2002 and took steps to consummate the transaction, such as provide their mortgage information and property information to the appellant and the title company involved. Secondly, the appellant had no incentive to pre-date the purchase agreement because the pressure was not on him to perform, the pressure was on the Scotts to sell their property before losing it in foreclosure. Thirdly, if the November 18, 2002 purchase agreement was signed on December 6, 2002, how did the appellant know of the Scotts' mortgage information, other debt information, and other details about the subject property? It takes time for the title company and the appellant to investigate the encumbrances against the property.

The Scotts and the appellant must have entered into the agreement on November 18, 2002 for the Scotts to be able to close the transaction by December 6, 2002, and for them to have time to vacate the subject property and remove their personal belongings. As it turned out by December 6, 2002, the day of the closing of the transaction when the grant deed was signed by the Scotts, the Scotts had already moved into a rental property owned by Ellie Sekone, the Scotts' new landlord. (See appellee's excerpts of record, p. ER-057.)

The above recitation of facts clearly shows that there are no disputed facts. The appellant has demonstrated that the bankruptcy court made clear error in its finding of fact, and therefore abused its discretion in approving the Compromise proposed by the appellee. The Scotts' bankruptcy court found in 2002 that the Scotts had no equity in the subject property while they were facing foreclosure. The Scotts were lucky enough to sell their property before losing it. The appellant purchased the Scotts' property through their real estate agent and broker. The appellant paid the Scotts' purchase price in full, including closing costs. The Scotts provided a receipt after the last payment showing that they had been paid in full. There are no disputed facts here. The Scotts cannot prove damages regardless of how much they say their property was worth six years later. The HESA does not apply because the Scotts had no equity in the property when they sold it by December 6, 2002. When the Scotts actually closed on the sale of their property on December 6, 2002 they had already moved into a rental property, thus they were no longer owner/occupants and HESA did not apply. (See CC { 1695.1(b).) Almost all of the money went to pay the Scotts' creditors, including their mortgage company, delinquent property taxes, child support judgment, and their new landlord.

1

2

I

3

## THE APPLICABLE STANDARDS GOVERNING
## THE BANKRUPTCY COURT'S DECISION REGARDING ITS
## "ORDER AUTHORIZING COMPROMISE"

4

5

6       The bankruptcy court can approve or reject a proposed compromise regarding any

7  controversy arising in the administration of the estate upon such terms as that court may

8  deem for the best interest of the estate.  (In re A & C Properties (9th Cir. [Cal] 1986) 784

9
F.2d 1377, 1380.)  The bankruptcy court had to "find that the compromise is fair and
10
equitable." (emphasis added)  (Id. at 784 F.2d 1381.)  In determining the fairness,
11

12  reasonableness, and adequacy of a proposed compromise agreement, this bankruptcy

13  court was required to consider:

14
(a) The probability of success in the litigation; (b) the
15              difficulties, if any, to be encountered in the matter of
collection; (c) the complexity of the litigation involved,
16              and the expense, inconvenience and delay necessarily
attending it; (d) the paramount interest of the creditors and
17              a proper deference to their reasonable views in the
premises.
18

19  (Ibid.)  The appellee/trustee, as the party proposing the compromise agreement, had the

20  burden of persuading the bankruptcy court that the compromise is fair and equitable and

21
should be approved.  (Ibid.)  Additionally, while the creditors' interests must be afforded
22
due deference, such interests or objections are not controlling.  (Id. at 784 F.2d 1382.)
23

24  The main focus in approving or rejecting a proposed compromise is that it be "fair and

25  equitable".  (Id. at 784 F.2d 1384.)

26       The debtor now addresses each of the above four determinative factors.

27

28

A. The Probability of Success.

The appellee believes that the probability of success is uncertain.

The Scotts had no equity in their property as shown by the 2002 bankruptcy court records. As a result they have suffered no damages on account of their sale to the appellant. Besides the contractual sales amount was paid in full by the appellant and the Scotts indicated after said payments that they had been paid in full. Hence how can the Scotts be damaged? They could not meet their burden of proof in a trial of their claim.

Moreover the Scotts' bankruptcy claim is invalid. It is totally based on the Equity Purchase Agreement between them and the appellant. The Scotts' proof of claim does not have prima facie validity because no documentation was attached as required under applicable bankruptcy law. (In re Los Angeles International Airport Hotel Associates (9th Cir. B.A.P. 1996) 196 B.R. 134, 139.) No documentation was attached to the Scotts' claim to justify any claim on their behalf, let alone a $500,000 claim, before the claims submission deadline of July 18, 2005.

The appellee indicates that in 2007, after the she objected to the Scotts' claim the Scotts produced some documentary evidence in support of their claim. However the appellee never provided this Court or the bankruptcy court with such documentation. Neither the record on appeal nor the appellee's excerpts of record contain such documentation. Even if such documentation was provided to the appellee, which is doubtful, it was provided long after the July 18, 2005 claims submission deadline.

The In re Los Angeles International Airport Hotel Associates case is clear, there must be documentation to support the claim for it to be valid. Here there was no such documentation. There was also no judgment in favor of the Scotts against the appellant,

neither in the state court nor in bankruptcy court. Absolutely nothing exists as of today proving that the appellant is somehow obligated to pay the Scotts $500,000, or $225,000, or any amount at all. The Scotts have never applied for a relief of stay in the bankruptcy court to pursue and prove their claim in the state court. That by itself is a good indication of the invalidity of their claim.


B.  Difficulty in Collection.

This element of the A&C Properties test is not a factor in consideration of this compromise.


C.  Complexity, Expense, and Delay.

The complexity, expense, and delay factor is not even an issue in this case. If this Compromise were not approved, the appellant/debtor at his own expense is willing to go to an evidentiary trial in the bankruptcy court, or pursue an evidentiary trial in state court. The appellant should be entitled to an evidentiary trial to determine the validity and the true amount of the Scotts' claim before their claim is allowed and before his assets, including his home, is sold to satisfy the Scotts' claim. The appellee/trustee cannot act as a judge and jury and deprive the appellant of his right to an evidentiary trial in this matter. The appellant would be willing to pursue an evidentiary trial at his own expense at no costs whatsoever to the bankruptcy estate.

The appellee makes much hay about a three or four day trial had she not entered into a compromise with the Scotts. The appellant initially asked the appellee to go to trial at his own expense in the state court and she refused. As stated above, the appellant

wants to go to trial at his own expense and at no costs to the appellee or the bankruptcy estate.

The appellant strongly believes that if an evidentiary trial is held, either in the bankruptcy court or in the state court, the trier of fact will determine that the Scotts' claim would amount to zero. If not zero, then substantially less than the appellee's $225,000 Compromise. Moreover, the appellant has a cross-complaint against the Scotts for fraud, breach of contract, failure to disclose in regards to California's mandatory Real Estate Transfer Disclosure Statement, etc. Hence the Compromise is not only cheating the appellant out of his right to an evidentiary trial whereby competent evidence would be produced to determine the validity and true value of the Scott's claim, but also the Compromise would cheat the appellant out of his due process rights regarding his causes of action against the Scotts in his cross-complaint.

In this Compromise the appellee wants to give a total of $225,000 for the Scotts' claim from the appellant's estate. However the debtor is only one of five defendants in the Scotts' lawsuit. What about the other defendants? A few months earlier the appellee stated that Scotts' claim should be disallowed because said claim was frivolous and grossly overstated. The appellee now wants to send $225,000 to the Scotts' for their unproven claim after knowing that the debtor had already paid nearly $164,000 to purchase the Scotts' property. This is bizarre.

Why should the appellant's home be sold to pay the unproven Scotts claim. The appellee as trustee has already pocketed over a million dollars in fees from the appellant's estate when she liquidated all of the appellant's properties except his home. Now this appellee/trustee wants to generate additional funds by liquidating the appellant's home to

pay the unproven claim of the Scotts, of which the Scotts admitted back in 2002 that they had been paid in full.

As for the complexity of the underlying Scott litigation, the appellant agrees with the appellee that the issues are not particularly complex. The issue is whether or not the Scotts' claim is allowed under applicable law, if so, did the appellant violate HESA, and if so, what are the damages that the Scotts can prove?

As for the expense, the appellant would be willing to prosecute this litigation via an evidentiary trial either in the bankruptcy court or in state court, at his own expense, at no cost whatsoever to the bankruptcy estate. This is certainly cheaper than having the appellant's estate pay $225,000 for the compromise of the Scotts' claims.

As for the delay element, the appellant has already filed his objection to the Scotts' claim. The bankruptcy court or the state court could also set a trial schedule within a short period of time. Hence the delay element is not an issue. There would be more delay if this Compromise is approved because the appellant will appeal that ruling.

D. Paramount Interest of Creditors.

The Scotts have submitted a frivolous claim in this bankruptcy proceeding. The Scotts' claim has no prima facie validity and should be disallowed under applicable law. (See In re Los Angeles International Airport Hotel Associates (9th. Cir. B.A.P. 1996) 196 B.R. 134, 139.) The Scotts' claim for $500,000 has no basis in fact or in law. The Scotts have no judgments against the appellant. There are five other co-defendants involved in the Scott litigation. The Scotts were willing to take $30,000 to settle their claim with one of the co-defendants, Nicole Wilkins, the Scotts' real estate agent, who obviously had

more exposure to liability. The Scotts have not pursued their claim in the state court action against any of the other co-defendants, by either trying to settle with same or by taking them to trial. In the three years since the Scotts filed their claim, they have not obtained a relief from the bankruptcy stay to pursue the trial of their claim in the state court.

Simply put, the Scotts should be required to prove their allegations against the appellant by competent evidence to a trier of fact, whether it is in the bankruptcy court or in the state court, to obtain a judgment against the appellant before they can become a valid creditor.

As for Nicole Wilkins, the Scotts' agent, who also submitted a claim in this bankruptcy proceeding for indemnity and her attorney's fees, she should also be required to prove her claim through competent evidence to a trier of fact, whether it is in the bankruptcy court or in the state court, and obtain a judgment against the appellant before she can become a valid creditor.

As for Phyllis Shoop, the other individual represented by the same attorneys as the Scotts, who also submitted a claim against the appellant in this bankruptcy proceeding, she also should be required to prove her claim through competent evidence presented to a trier of fact, whether in the bankruptcy court or in the state court, and obtain a judgment against the appellant before she can become a valid creditor.

The claims of the Scotts, Wilkins, and Shoop, must be allowed under applicable law in this bankruptcy proceeding before they can even be considered creditors.

The above claimants must prove their claims first to a trier of fact either in the state court or in the bankruptcy court before they can become creditors.

CONCLUSION

Consequently, this Compromise should be rejected in its entirety. The Scotts do not have a judgment against the appellant, and the Scotts' claim should be disallowed because it is invalid under applicable law. Moreover, said claim has no probability of success. If it had, the Scotts' attorneys would have long ago pursued an evidentiary trial in the bankruptcy court or would have asked for relief of stay to pursue an evidentiary trial in the state court. The appellee and her attorneys admit that the probability of success of the Scotts' claim is uncertain. The bottom line is that this Compromise is not fair and not equitable to the debtor nor his estate. It conveys no benefit whatsoever to the bankruptcy estate. This Compromise guarantees $225,000 in total payment for the Scotts' claim which the appellee admitted, just a few months ago, had no probability of success.

This Court should have no problem in allowing an evidentiary trial to be held to determine the true validity and/or the true value of the Scotts' claim. The Scotts should be required to prove their claim before a trier of fact before getting paid a dime for their claim.

July 31, 2008                    Respectfully Submitted,

                                 /S/ WILLIAM E. GILG
                                 WILLIAM E. GILG,
                                 Attorney for Appellant/Debtor

PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in

the City of San Mateo, that I am over the age of 18 and not a party to the within cause;

that my business address is 305 San Bruno Avenue West, San Bruno, California; and that

on the date set out below I deposited a true copy of the attached documents, listed below,

on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

[ ]  Fax via ( )

[]  Personal Service

--by placing a true copy thereof enclosed in a sealed envelope with postage

thereon fully prepaid in the United States Mail at San Bruno, California;


Documents Served: <u>APPELLANTS' REPLY BRIEF ON APPEAL FROM THE</u>
<u>BANKRUPTCY COURT'S ORDER AUTHORIZING COMPROMISE OF CLAIM OF</u>
<u>ROBERT AND ALYSSA SCOTT</u>


Party Served:  CHARLES P. MAHER, ESQ.
      Hamilton & Scripps, LLP
      Rincon Center II, 121 Spear Luce, Forward, St., Suite 200
      San Francisco, CA 94105


I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed at San Bruno, California on August 1, 2008.

       /S/ WILLIAM E. GILG
       WILLIAM E. GILG

1